UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| RONNY LEE FAIN, | ) |
| Petitioner, | ) 3:09-cv-00169-RCJ-WGC |
| vs. | ) **ORDER** |
| JACK PALMER, *et al,* | ) |
| Respondents. | ) |

This is a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 in which petitioner, a state prisoner, is proceeding *pro se.* The case proceeds on the petition filed on April 20, 2009. (ECF No. 6.) Respondents have filed an answer to the petition. (ECF No. 40.) The case is before the court for resolution on the merits.

**I. Background and Procedural History**

This case stems from the death of Bobby Thomas in 1979 resulting from multiple stab wounds. Petitioner and his wife were charged in connection with Thomas' death.

On June 3, 1980, in the Eighth Judicial District Court ("District Court"), petitioner was convicted pursuant to a guilty plea of second-degree murder. (Index Ex. 1.)[1] On June 2, 1980, petitioner filed a *pro se* notice of appeal. (Index Ex. 2.)

On February 2, 1990, petitioner filed a motion to withdraw his guilty plea and a post-conviction petition in state District Court. (Index Ex. 4, Ex. 5.) The District Court denied the

---

[1] The index is found at ECF No. 16. The supplemental index is found at ECF No. 25.

motion and the petition on March 22, 1990. (Index Ex. 6.) Petitioner filed a notice of appeal as to both on March 27, 1990. (Index Ex. 7.) The Nevada Supreme Court dismissed the appeal on December 7, 1990. (Index Ex. 9.)

Subsequently, petitioner filed a petition for writ of habeas corpus directly in the Nevada Supreme Court. (Index Ex. 10.) The court denied the petition on the ground that under the Nevada Rules of Appellate Procedure, such a petition must ordinarily be presented to the District Court in the first instance. (*Id*.)

On July 15, 1993, petitioner filed a second post-conviction petition in state District Court. (Index Ex. 11.) Counsel was appointed and supplemental points and authorities were filed on August 9, 1994. (Index Ex. 12.) The District Court denied the second post-conviction petition on June 6, 1995. (Index Ex. 15.) Petitioner filed a notice of appeal, but voluntarily dismissed the appeal. (Supplemental Index Ex. 3.)

In June 2007, petitioner filed two *pro se* motions to correct illegal sentence in District Court. (Index Ex. 17, Ex. 18.) Both motions were denied by the District Court. (Index Ex. 19, Ex. 23.) Petitioner appealed, and on December 10, 2007, the Nevada Supreme Court affirmed the denials. (Index Ex. 20, Ex. 24.) On December 19, 2007, petitioner filed a motion for rehearing in the Nevada Supreme Court, which was denied. (Index Ex. 25, Ex. 26.) However, the Nevada Supreme Court realized at that time that petitioner had filed a direct appeal in 1980, but that the notice of appeal was never transmitted to the Nevada Supreme Court. (Index Ex. 26.) The Nevada Supreme Court ordered the clerk of the District Court to immediately transmit the notice of appeal along with all required documents to the court. (*Id*.)

After briefing by the parties, the Nevada Supreme Court entered its order on March 4, 2009, affirming petitioner's conviction. (Index Ex. 28.) On May 29, 2009, petitioner filed a motion for rehearing, which the Nevada Supreme Court denied. (Index Ex. 30.)

Petitioner dispatched his federal petition for writ of habeas corpus to this court on March 30, 2009. (ECF No. 1.) On August 3, 2010, the court issued an order finding grounds five, six, eight,

2

and nine unexhausted. (ECF No. 39.) Based on an earlier filing by petitioner clearly stating that he wished to withdraw any claims found to be unexhausted, the court dismissed grounds five, six, eight, and nine. Thus, the court addresses the merits of the remaining grounds in the petition—grounds one, two, three, four, and seven.

## II.     Federal Habeas Corpus Standards

The Antiterrorism and Effective Death Penalty Act ("AEDPA"), at 28 U.S.C. § 2254(d), provides the legal standard for the court's consideration of this habeas petition:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim –
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

The AEDPA "modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone,* 535 U.S. 685, 693-694 (2002). A state court decision is contrary to clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254, "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme Court] and nevertheless arrives at a result different from [the Supreme Court's] precedent." *Lockyer v. Andrade,* 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor,* 529 U.S. 362, 405-406 (2000) and citing *Bell,* 535 U.S. at 694 (2002)).

A state court decision is an unreasonable application of clearly established Supreme Court precedent, within the meaning of 28 U.S.C. § 2254(d), "if the state court identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that

3

1  principle to the facts of the prisoner's case." *Lockyer v. Andrade,* 538 U.S. at 75 (quoting *Williams*,
2  529 U.S. at 413).  The "unreasonable application" clause requires the state court decision to be more
3  than merely incorrect or erroneous; the state court's application of clearly established federal law
4  must be objectively unreasonable.  *Id.* (quoting *Williams*, 529 U.S. at 409).

5  In determining whether a state court decision is contrary to, or an unreasonable application of
6  federal law, this court looks to the state courts' last reasoned decision.  *See Ylst v.Nunnemaker*, 501
7  U.S. 797, 803-04 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079 n.2 (9th Cir. 2000), *cert.*
8  *denied*, 534 U.S. 944 (2001).  Moreover, "a determination of a factual issue made by a State court
9  shall be presumed to be correct," and the petitioner "shall have the burden of rebutting the
10 presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

11 **III. Discussion**

12     **A. Ground One**

13 In ground one petitioner argues that the twenty-eight-year delay in processing his direct
14 appeal violated his federal constitutional right to due process.

15 Respondents argue that petitioner is not entitled to relief on ground one because the delay in
16 his appeal did not violate clearly established federal law as determined by the United States Supreme
17 Court.

18 Despite the extraordinarily lengthy delay accompanying petitioner's direct appeal in state
19 court, respondents are correct that petitioner is not entitled to relief on ground one.  Recently, the
20 Ninth Circuit explained that "no clearly established Federal law, as determined by the Supreme
21 Court of the United States recognizes a due process right to a speedy appeal." *Hayes v. Ayers*, 632
22 F.3d 500, 523 (9th Cir. 2011) (citations and internal quotation marks omitted).  Even though *Barker*
23 *v. Wingo*, 407 U.S. 514 (1972), which established the contours of the right to a speedy trial, has been
24 extended by lower courts to a new setting—the right to a speedy appeal— "[n]o Supreme Court
25 decision 'squarely addresses' the right to a speedy appeal, nor does the right to a speedy trial 'clearly
26 extend' to the appellate context." *Id*.  "[W]hen a Supreme Court decision does not 'squarely

address[ ] the issue in th[e] case' or establish a legal principle that 'clearly extend[s]' to a new context, 28 U.S.C. § 2254(d)(1) requires that we deny relief." *Id*. (alterations in original) (quoting *Moses v. Payne*, 555 F.3d 742 (9th Cir. 2009) (citation omitted). Thus, *Hayes* forecloses relief on petitioner's due process claim asserted in ground one because no clearly established law, as determined by the United States Supreme Court, recognizes a due process right to a speedy appeal. *See Blair v. Martel*, 645 F.3d 1151, 1158 (9th Cir. 2011). Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This court will deny habeas relief as to ground one.

**B.  Ground Two**

In ground two, petitioner claims that the trial court's failure to include the waiver clause of Nev. Rev. Stat. § 177.015 before accepting his plea renders his plea invalid and obtained in violation of due process. Petitioner alleges that the trial court's failure to advise him that he was waiving his direct appeal by entering a guilty plea invalidates his plea because he could not consent to the waiver if he was unaware of his right to a direct appeal.

Respondents argue that petitioner is not entitled to relief on this ground because even though the trial court erroneously advised him that he had no right to a direct appeal, petitioner knew of his right to appeal, actually filed a notice of appeal, and thus, suffered no prejudice from the trial court's error.

The court concludes that ground two is unexhausted. Petitioner failed to give the Nevada Supreme Court a fair opportunity to address this claim on direct appeal.

A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A petitioner must give the state courts a fair opportunity to act on each of his claims before he presents those claims in a federal habeas petition. *O'Sullivan v. Boerckel,* 526 U.S.

838, 844 (1999); *see also Duncan v. Henry,* 513 U.S. 364, 365 (1995).  A claim remains unexhausted until the petitioner has given the highest available state court the opportunity to consider the claim through direct appeal or state collateral review proceedings.  *See Casey v. Moore,* 386 F.3d 896, 916 (9th Cir. 2004); *Garrison v. McCarthey,* 653 F.2d 374, 376 (9th Cir. 1981).  A claim is not exhausted unless the petitioner has presented to the state court the same operative facts and legal theory upon which his federal habeas claim is based.  *Bland v. California Dept. Of Corrections,* 20 F.3d 1469, 1473 (9th Cir. 1994).  The exhaustion requirement is not met when the petitioner presents to the federal court facts or evidence which place the claim in a significantly different posture than it was in the state courts, or where different facts are presented at the federal level to support the same theory.  *See Nevius v. Sumner,* 852 F.2d 463, 470 (9th Cir. 1988); *Pappageorge v. Sumner,* 688 F.2d 1294, 1295 (9th Cir. 1982); *Johnstone v. Wolff,* 582 F. Supp. 455, 458 (D. Nev. 1984).

  Here, in his opening brief on direct appeal, petitioner challenged the sufficiency of the trial court's plea canvass and argued that his guilty plea was invalid. (Index Ex. 27 at 5-10.)  However, petitioner did not specifically present the claim he asserts in this case as ground two.  Petitioner did not argue that his guilty plea was invalidated by any issues concerning waiver of appeal.  Rather, it appears that petitioner used the trial court's erroneous statement that he did not have a right to a direct appeal to support the claim petitioner presents here as ground one—that the lengthy delay in his appeal violates due process.  (*Id*. at 10-13.)

  The Ninth Circuit Court of Appeals has held that § 2254(b)(2) permits the denial of a federal habeas petition on the merits, notwithstanding the petitioner's failure to exhaust, "only when it is perfectly clear that the applicant does not raise even a colorable federal claim."  *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005).  The court concludes that ground two fails to raise a colorable federal claim.  Petitioner's argument here is plainly nonsensical.  Petitioner contends that his lack of knowledge regarding the availability of a direct appeal means that he could not waive his direct appeal.  Despite the trial court's erroneous statement that petitioner did not have a direct appeal,

6

1  petitioner filed a notice of appeal, and his case was eventually heard by the Nevada Supreme Court
2  on appeal.  Petitioner did not waive his direct appeal when he entered his guilty plea.  Thus,
3  petitioner fails to raise a colorable claim because he actually knew of his right to appeal, as
4  evidenced by his filing of a notice of appeal, and he did not waive his direct appeal at any time.
5  Accordingly, the court denies habeas relief on ground two.

    **C.  Ground Three**

In ground three, petitioner claims that his guilty plea is invalid and was obtained in violation of due process because at the entry of plea, he did not admit to facts supporting a guilty plea of second-degree murder.  Rather, petitioner alleges that because he stated that he did not act with malice during the plea canvass, that his admissions only amount to manslaughter.

Respondents argue that petitioner is not entitled to relief on ground three because his statements during the plea canvass support second-degree murder.

    1.  Legal Standard

"A plea of guilty and ensuing conviction comprehend all the factual and legal elements necessary to sustain a binding, final judgment of guilt and a lawful sentence." *United States v. Broce*, 488 U.S. 563, 569 (1989).  To be valid, a guilty plea must be knowing, voluntary, and intelligent.  *U.S. v. Brady*, 397 U.S. 742, 748 (1970).  A guilty plea must represent a voluntary and intelligent choice among alternative courses of action open to a defendant.  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  Advice for a guilty plea does not require a description of every element of the offense.  *Bargas v. Burns*, 179 F.3d 1207, 1216 (9th Cir. 1999) (citation omitted).  The court looks to what a defendant reasonably understood at the time of the plea.  *See U.S. v. Quan*, 789 F.2d 711, 713 (9th Cir. 1986).  "A habeas petitioner bears the burden of establishing that his guilty plea was not voluntary and knowing." *Little v. Crawford*, 449 F.3d 1075, 1080 (9th Cir. 2006) (citation omitted).  The record must demonstrate that the defendant understands that he is waiving his privilege against self-incrimination, his right to a jury trial, and his right to confront accusers.  *Boykin v. Alabama*, 395 U.S. 238, 243 (1969).  "Solemn declarations in open court carry a strong presumption of verity."

7

*Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977); *see also United States v. Anderson*, 993 F.2d 1435, 1438 (9th Cir. 1993) (stating that a defendant's statements, made in open court at time of his plea, are entitled to great weight).

2. Discussion

In addressing this claim, the Nevada Supreme Court ruled:

> Since our decision in Bryant v. State, 102 Nev. 268, 272, 721 P.2d 364, 367-68 (1986), we have consistently refused to consider challenges to the validity of a guilty plea in the first instance on direct appeal from a judgment of conviction except in limited circumstances when the error clearly appears from the record or the challenge to the plea involves a pure question of law. E.g., O'Guinn v. State, 118 Nev. 849, 851-52, 59 P. 3d 488, 489-90 (2002). Before Bryant, this court had, on occasion, entertained a challenge to a guilty plea on direct appeal when the issue had not been raised first in the district court, but it appears that the court did so only when the error was clear from the record. See, e.g., Love v. State, 99 Nev. 147, 148, 659 P.2d 876, 877 (1983). Because Fain's appeal was initiated in 1980, we must keep these variations in our cases in mind. What has remained constant is the defendant's burden of proving that his plea was invalid. Gardner v. State, 91 Nev. 443, 448, 537 P.2d 469, 472 (1975), and this court's focus on the totality of the circumstances when considering a challenge to the validity of a guilty plea. Bryant, 102 Nev. at 272, 72 P.2d at 367-68 (citing Taylor v. Warden, 96 Nev. 272, 607 P.2d 587 (1980), overruled on other grounds by David v. Warden, 99 Nev. 799, 671 P.2d 234 (1983)).
>   As to Fain's knowledge of the malice element, this court has indicated that the record must demonstrate that the defendant understood the elements of the offense or made factual statements that constitute an admission to the offense. Id. at 270, 721 P.2d at 366. Although the district court asked a question during Fain's factual admission that erroneously suggested that malice aforethought was not an element of second-degree murder, it is clear that the district court was drawing a distinction between first-degree murder and second-degree murder. But more importantly, Fain's factual statements constituted an admission to the offense of second-degree murder—he was enraged at the victim's bragging about raping and killing a teenage girl and stabbed the victim in the face and slashed his neck. Additionally, Fain indicated that he and counsel had discussed the elements of the charged offense and that he had received the amended information, which included the malice aforethought element. Given the totality of the circumstances, we conclude that Fain understood the nature of the charge.

(Index Ex. 28 at 2-3.)

When he entered his guilty plea at his initial arraignment, petitioner stated that he: (1) understood the second-degree murder charge; (2) had received a copy of the amended information,

8

1 (3) had his counsel explain the elements of the crime, the burden of proof required by the state, and
2 any available defenses; and (4) understood what his counsel had explained to him.  (Supplemental
3 Index Ex. 1 at 2-3.)  Thus, petitioner affirmed several times that he understood the elements of
4 second-degree murder, which includes malice.  *See* Nev. Rev. Stat. § 200.010; Nev. Rev. Stat. §
5 200.030. This court concludes that the Nevada Supreme Court's conclusion that petitioner's guilty
6 plea was voluntary and intelligent, despite the trial court's misstatement regarding malice, was not an
7 objectively unreasonable application of federal law.   The factual findings of the state court are
8 presumed correct. 28 U.S.C. § 2254(e)(1).  Petitioner has failed to meet his burden of proving that
9 the state court's ruling was contrary to, or involved an unreasonable application of, clearly
10 established federal law, as determined by the United States Supreme Court, or that the ruling was
11 based on an unreasonable determination of the facts in light of the evidence presented in the state
12 court proceeding.  This court will deny habeas relief as to ground three.

13 **D.  Ground Four**
14 In ground four, petitioner claims that his guilty plea was obtained in violation of due process
15 because the trial court failed to properly canvass him regarding the coercive impact of the state's
16 promise to dismiss charges against his wife.  Petitioner alleges that his counsel coerced him into
17 pleading guilty by telling him that his failure to do so would result in his wife spending up to twenty
18 years in prison.
19 Respondents argue that petitioner is not entitled to relief on ground four because during the
20 plea canvass, petitioner made clear that his plea was voluntary.
21 1. Legal Standard
22 To be valid, a guilty plea must be knowing, voluntary, and intelligent.  *U.S. v. Brady*, 397
23 U.S. 742, 748 (1970).  A guilty plea must represent a voluntary and intelligent choice among
24 alternative courses of action open to a defendant.  *Hill v. Lockhart*, 474 U.S. 52, 56 (1985).  A plea is
25 "involuntary" if it is the product of threats, improper promises, or other forms of wrongful coercion.
26 *Brady*, 397 U.S. at 750.  Agents of the state may not produce a plea by mental coercion overbearing

the will of the defendant. *See Brady*, 397 U.S. at 750. Additionally, coercion by a defendant's attorney or other third party may render a guilty plea involuntary. *See Iaea v. Sunn*, 800 F.2d 861, 866-68 (9th Cir. 1986). A court considers "all of the relevant circumstances surrounding" a guilty plea in determining whether it was voluntary. *Brady*, 397 U.S. at 749.

2. Discussion

In addressing this claim, the Nevada Supreme Court ruled:

> As to the coercion claim, this court has recognized that "[a] threat to prosecute a member of the defendant's family does not constitute coercion per se," rather "[t]he defendant must prove that the threat in fact coerced him into making the plea." Gardner, 91 Nev. at 447, 537 P.2d at 471. Here, the State had charged Fain's [wife] as an accessory after the fact. As part of Fain's plea agreement, the State agreed to dismiss that charge, but it also agreed to dismiss other charges against Fain and accept a plea to a reduced charge of second-degree murder with no deadly weapon enhancement. The district court inquired into these benefits of the plea during the plea canvass, including the agreement to dismiss the charge against Fain's [wife]. Although the inquiry was brief, Fain acknowledged these benefits and represented that his plea was a free and voluntary act that was not coerced. Given this record, Fain has not demonstrated that the plea was the result of coercion rather than a voluntary choice.

(Index Ex. 28 at 3-4) (first alteration in original).

During the hearing at which petitioner entered his guilty plea, the following exchange, in relevant part, occurred:

> THE COURT: Is your plea of guilty freely and voluntarily made?
>
> [PETITIONER]: Yes.
>
> THE COURT: Is it made without threat or fear to yourself?
>
> [PETITIONER]: Yes.
>
> THE COURT: Is it made without threat or fear to anyone closely related to or associated with you?
>
> [PETITIONER]: Yes.
>
> . . .
>
> THE COURT: Would you please state the full extent of any negotiations undertaken in this case with the district attorney on behalf of the defendant, Mr. Pitaro?

| | |
|---|---|
| 1 | MR. PITARO: Yes, your Honor.  In exchange for the filing of the amended information, the defendant would plead guilty to that amended information alleging second degree murder.  Additionally, the charge of robbery with use of a deadly weapon, commission of crime, will be dismissed.  The additional crime of escape will be dismissed at the time of sentencing.  And in addition, charge of accessory to murder in justice court, case against [petitioner's wife], at the time of sentencing will be dismissed. |
| 5 | . . . |
| 6 | THE COURT: Mr. Fain, is this your understanding of the full extent of the negotiations undertaken in your behalf by your attorneys with the district attorney? |
| 8 | [PETITIONER]: Yes. |
| 9 | . . . |
| 10 | THE COURT: Aside from these negotiations, has anyone made any promise of a lesser sentence, probation, reward, immunity, or anything else in order to induce you to plead guilty? |
| 12 | [PETITIONER]: No. |
| 13 | . . . |
| 14 | THE COURT: Is part of the reason that you're entering a plea of guilty so you don't have to stand trial on the open murder charge and also the escape charge and the robbery and use of a deadly weapon charge? |
| 16 | [PETITIONER]: Yes, it is.  And to get my wife out of this. |
| 17 | THE COURT: And to get what? |
| 18 | [PETITIONER]: My wife out of this.  She wasn't involved in it. |
| 19 | THE COURT: But this is a free and voluntary act on your part? |
| 20 | [PETITIONER]: It is. |
| 21 | THE COURT: Nobody's coercing you to make this statement? |
| 22 | [PETITIONER]: No. |

(Supplemental Index Ex. 1 at 3-8.)  During the plea colloquy, petitioner affirmed multiple times that his guilty plea was voluntary.  Additionally, when specifically asked by the trial court if he was coerced, after he indicated that his wife's treatment was one of his considerations, petitioner denied that his guilty plea was a result of coercion.  Although the United States Supreme Court has observed

11

that a prosecutor's offer during plea bargaining of lenient treatment for a person other than the accused may "pose a greater danger of inducing a false guilty plea by skewing the assessment of the risks a defendant must consider," it has not addressed the issue of whether such package plea agreements raise constitutional implications. *Bordenkircher v. Hayes*, 434 U.S. 357, 364 n.8 (1978). The Ninth Circuit Court of Appeals has found that a prosecutor's promise to treat a third party with leniency during plea bargaining is not coercive per se. *United States v. Caro*, 997 F.2d 657, 659 (9th Cir. 1993). The mere fact that petitioner was offered the option of ensuring that his wife avoided prison in exchange for a reduced charge did not deprive petitioner of the ability to voluntarily decide to accept the plea deal. *See Doe v. Woodford*, 508 F.3d 563, 572 (9th Cir. 2007) ("We have no doubt that the decision to plead guilty is a difficult one for many defendants, but the fact that one struggles with the decision, and might later even come to regret it, does not render it coerced."); *United States v. Kaczynski*, 239 F.3d 1108, 1115-1116 (9th Cir. 2001) ("being forced to choose between unpleasant alternatives is not unconstitutional."); *United States v. Mescual-Cruz*, 387 F.3d 1, 8-9 (1st Cir. 2004) ("If a defendant elects to sacrifice himself [to protect someone close to him] that is his choice, and he cannot reverse it after he is dissatisfied with his sentence, or with other subsequent developments.") (alteration in original). Therefore, in this case, the court concludes that the Nevada Supreme Court's holding that the totality of the circumstances indicates that petitioner's guilty plea was voluntary is not erroneous. Petitioner has failed to meet his burden of proving that the state court's ruling was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the United States Supreme Court, or that the ruling was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding. This court will deny habeas relief as to ground four.

### E. Ground Seven

In ground seven, it appears that petitioner claims that his sentence is illegal and in violation of due process because the trial court failed to enhance his sentence under Nev. Rev. Stat. § 193.165. Petitioner alleges that because the imposition of Nev. Rev. Stat. § 193.165 is mandatory, it could not

be used as a bargaining chip in plea negotiations.

Respondents argue that petitioner fails to present a valid claim for relief under clearly established federal law.

As with ground two, ground seven is unexhausted. A federal court will not grant a state prisoner's petition for habeas relief until the prisoner has exhausted his available state remedies for all claims raised. *Rose v. Lundy*, 455 U.S. 509 (1982); 28 U.S.C. § 2254(b). A habeas petitioner must "present the state courts with the same claim he urges upon the federal court." *Picard v. Connor*, 404 U.S. 270, 276 (1971). The federal constitutional implications of a claim, not just issues of state law, must have been raised in the state court to achieve exhaustion. *Ybarra v. Sumner*, 678 F. Supp. 1480, 1481 (D. Nev. 1988) (citing *Picard*, 404 U.S. at 276)). To achieve exhaustion, the state court must be "alerted to the fact that the prisoner [is] asserting claims under the United States Constitution" and given the opportunity to correct alleged violations of the prisoner's federal rights. *Duncan v. Henry,* 513 U.S. 364, 365 (1995); s*ee Hiivala v. Wood,* 195 F.3d 1098, 1106 (9th Cir. 1999). It is well settled that 28 U.S.C. § 2254(b) "provides a simple and clear instruction to potential litigants: before you bring any claims to federal court, be sure that you first have taken each one to state court." *Jiminez v. Rice,* 276 F.3d 478, 481 (9th Cir. 2001) (quoting *Rose v. Lundy,* 455 U.S. 509, 520 (1982)). "[G]eneral appeals to broad constitutional principles, such as due process, equal protection, and the right to a fair trial, are insufficient to establish exhaustion." *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999) (citations omitted). However, citation to state caselaw that applies federal constitutional principles will suffice. *Peterson v. Lampert*, 319 F.3d 1153, 1158 (9th Cir. 2003) (en banc).

In this case, petitioner raised his argument concerning the trial court's failure to enhance his sentence under Nev. Rev. Stat. § 193.165 in a motion to correct illegal sentence. (Index Ex. 17.) In raising this claim, petitioner did not argue that his rights under the United States Constitution had been violated. Rather, petitioner presented this claim as an error of state law only.

As discussed above, § 2254(b)(2) permits the denial of a federal habeas petition on the merits,

notwithstanding the petitioner's failure to exhaust, "only when it is perfectly clear that the applicant does not raise even a colorable federal claim." *Cassett v. Stewart*, 406 F.3d 614, 623-24 (9th Cir. 2005). The court concludes that ground seven fails to raise a colorable federal claim. Nev. Rev. Stat. § 193.165 provides, in relevant part, "any person who uses a firearm or other deadly weapon . . . in the commission of a crime shall, in addition to the term of imprisonment prescribed by statute for the crime, be punished by imprisonment in the state prison for a minimum term of not less than 1 year and a maximum term of not more than 20 years." As noted by the Nevada Supreme Court, petitioner did not plead guilty to second-degree murder with use of a deadly weapon, rather, he pled guilty to second-degree murder and the deadly weapon enhancement was dropped as part of the plea agreement. (Index Ex. 24.) Thus, Nev. Rev. Stat. § 193.165 did not apply to petitioner. Accordingly, the court denies habeas relief on ground seven.

## IV. Certificate of Appealability

In order to proceed with an appeal, petitioner must receive a certificate of appealability. 28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22; 9th Cir. R. 22-1; *Allen v. Ornoski,* 435 F.3d 946, 950-51 (9th Cir. 2006); s*ee also United States v. Mikels*, 236 F.3d 550, 551-52 (9th Cir. 2001). Generally, a petitioner must make "a substantial showing of the denial of a constitutional right" to warrant a certificate of appealability. *Id.;* 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000). "The petitioner must demonstrate that reasonable jurists would find the district court;s assessment of the constitutional claims debatable or wrong." *Id.* (*quoting Slack*, 529 U.S. at 484). In order to meet this threshold inquiry, the petitioner has the burden of demonstrating that the issues are debatable among jurists of reason; that a court could resolve the issues differently; or that the questions are adequate to deserve encouragement to proceed further. *Id.* This court has considered the issues raised by petitioner, with respect to whether they satisfy the standard for issuance of a certificate of appealability, and determines that none meet that standard. The court will therefore deny petitioner a certificate of appealability.

## V. Conclusion

1      **IT IS THEREFORE ORDERED** that the petition for a writ of habeas corpus (ECF No. 6) is
2 **DENIED IN ITS ENTIRETY**.

3      **IT IS FURTHER ORDERED** that the clerk **SHALL ENTER JUDGMENT**
4 **ACCORDINGLY.**

5      **IT IS FURTHER ORDERED** that petitioner is **DENIED A CERTIFICATE OF**
6 **APPEALABILITY.**

7      Dated this 24th day of September, 2012.

                                          _____
                                          UNITED STATES DISTRICT JUDGE